IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOE RICHARDSON, *et al.*, | ) |
| | ) |
|    PLAINTIFFS, | ) |
| | ) |
| v. | )   CASE NO.: 2:09-cv-177-MEF |
| | ) |
| CHEROKEE NATIONAL LIFE | ) |
| INSURANCE COMPANY, *et al.*, | )   (WO) |
| | ) |
|    DEFENDANTS. | ) |

## **MEMORANDUM OPINION AND ORDER**

This breach of contract action is before the Court on a motion to remand challenging this Court's subject matter jurisdiction over the action. At issue in this case is the application of 28 U.S.C. § 1332(d), which provides for diversity jurisdiction in certain class actions in which the amount in controversy exceeds $5,000,000. Congress enacted this provision and its corresponding removal provision, 28 U.S.C. § 1446, pursuant to the Class Action Fairness Act of 2005 ("CAFA). The Court has carefully considered the arguments offered in support of and in opposition to the motion to remand, as well as the pertinent statutes and cases. For the reasons set forth below, the Court finds that the motion to remand is due to be GRANTED.

### BACKGROUND

Joe and Elizabeth Richardson ("Plaintiffs") are residents of Alabama. On four occasions between May 11, 2001 and June 25, 2003, Plaintiffs applied for and received loans from Credit Plan, Inc., a lending entity in Eufaula, Alabama. In connection with the first

three loan transactions, Plaintiffs purchased joint credit life insurance from Cherokee National Life Insurance Company ("Cherokee"), a Georgia corporation. In connection with the last loan transaction, Joe Richardson purchased credit life insurance from Cherokee. The credit life insurance policies were designed to pay off the outstanding loan balance if Plaintiffs died while a loan was outstanding. Each credit life insurance policy was paid for with a single premium payment at the time the loan was secured. Plaintiffs allege that the law requires insurance coverage under such policies to stop if the loan is paid off early and that policyholders would be entitled to a refund of the unearned premium.[1] Plaintiffs paid their four loans in full prior to the maturation date of the loans and prior to the expiration date of the credit life insurance coverage, but did not receive a refund from Cherokee for the portion of the up-front premium payments which were "unearned."

On January 28, 2009. Plaintiffs filed suit against Cherokee and unnamed fictitious defendants in the Circuit Court of Barbour County Alabama. Plaintiffs bring their action as a class action pursuant to Alabama Rule of Civil Procedure 23 and seek to represent a class consisting of all persons or entities throughout the United States of America that are former owners of a Cherokee credit life policy whose insured debt was paid off before the scheduled expiration date of coverage, but who have not received a refund of unearned premiums. While Plaintiffs allege that this class is comprised of more than fifty people, they allege that

---

[1] The unearned premium is that portion of the premium which would pay for the insurance coverage during the period between the date of the payoff of the loan and the terminal payment on the loan if the loan had not been repaid early.

they do not know the exact number and identity of the class members. Plaintiffs claims against Cherokee are for breach of contract for failing to refund unearned premiums in accordance with the terms of the contracts of credit life insurance. They seek economic damages, attorneys' fees for class counsel, costs, and expenses.

On February 2, 2009, Cherokee's agent for service of process received a copy of the Complaint. On March 4, 2009, Cherokee timely filed a notice of removal asserting that this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this action presents a dispute in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of costs and interest. Cherokee appended several exhibits to its notice of removal including a declaration from its Vice President of Administration[2] and a declaration from a consulting actuary.[3] On April 2, 2009, Plaintiffs filed the instant motion to remand. By this motion, Plaintiffs contend that Cherokee has failed to satisfy its burden of proving the amount in controversy exceeds the required sum.

---

[2] This declaration sets forth the total number of credit life insurance policies Cherokee has issued from 2003 to the present to borrowers in Alabama, Arkansas, Florida, Georgia, Louisiana, Missouri, Mississippi, North Carolina, South Carolina, and Tennessee. Additionally, it provides the total gross premium on these policies: $106,906.807. The declaration goes on to state that during this same period approximately 588,786 policies issued to borrowers were canceled prior to their scheduled expiration date and that Cherokee provided refunds of unearned premiums in the amount of $35,352,149 to those individuals.

[3] The actuary was apparently asked to provide an expert opinion as to the percentage of consumer installment loans insured by a credit life insurance product which are terminated by prepayment or refinancing prior to the scheduled maturity date. In his opinion at least 60% of all consumer installment loans insured by a credit life insurance product are terminated by prepayment or refinancing prior to the scheduled maturity date.

## DISCUSSION

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *Wymbs v. Republican State Executive Comm.*, 719 F.2d 1072, 1076 (11th Cir. 1983). As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *Kokkonen*, 511 U.S. at 377. Under CAFA,[4] federal courts have original jurisdiction over class actions "in which the original amount in controversy exceeds $5,000,000 and there is minimal diversity (at least one plaintiff and one defendant are from different states)." *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1327 (11th Cir. 2006); 28 U.S.C. § 1332(d)(2), (6). In addition, the number of members of all proposed plaintiffs in the class must exceed one hundred. 28 U.S.C. § 1332(d)(5)(B). A class action may be removed to federal court in accordance with 28 U.S.C. § 1446 if the federal court has original jurisdiction over the action. 28 U.S.C. § 1453(a), (b).

In the Eleventh Circuit, removal statutes are to be interpreted narrowly, with any doubts construed against removal. *See Williams v. AFC Enter., Inc.*, 380 F.3d 1185, 1189 (11th Cir. 2004). *Accord, Burns*, 31 F.3d at 1095. (Because removal jurisdiction raises significant federalism concerns, "removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand.") Thus,

---

[4] Congress enacted CAFA to address inequitable state court treatment of class actions. Congress expanded federal subject matter jurisdiction by amending the diversity jurisdiction statute.

the non-moving party may move for remand, which will be granted if "it appears that the district court lacks subject matter jurisdiction." *See* 28 U.S.C. § 1447(c).

When a district court is presented with a motion to remand, it must keep in mind that the defendant who removed the case, and not the movant, bears the burden of demonstrating federal subject matter jurisdiction. *See Friedman v. New York Life Ins.* Co., 410 F.3d 1350, 1353 (11th Cir. 2005); *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). *Accord, Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1207 (11th Cir. 2007), *cert. denied,* 128 S. Ct. 2877 (2008) ("the party seeking a federal venue must establish the venue's jurisdictional requirements" and therefore removing defendants bear that burden in the context of a motion to remand).

In *Lowery*, the Eleventh Circuit Court of Appeals reiterated that in cases, such as this one, where the complaint does not specify the amount of damages sought, "the removing party bears burden of establishing the jurisdictional amount by a preponderance of the evidence." 483 F.3d at 1208-09, 1210. The Court cautioned, however, that "[i]f the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction. If not, the court must remand. Under this approach, jurisdiction is either evident from the removing documents or remand is appropriate." *Id.* at 1211. Importantly, the *Lowery* court stated that it is

> highly questionable whether a defendant could ever file a notice of removal on diversity grounds in a case such as the one before us - where the defendant, the party with the burden of proof, has only bare pleadings containing unspecified damages on which to base its notice- without seriously testing the limits of

5

compliance with Rule 11. Unlike the typical plaintiff who originally brings a diversity action in federal court, the removing defendant generally will have no direct knowledge of the value of plaintiff's claims. To the extent that the defendant does obtain knowledge of the claims' value, it will generally come from the plaintiff herself in the form of information in an "other paper."

*Id.* at 1213 n.63 (internal citations omitted). The absence of "other paper" from the plaintiff in a case in which the complaint is silent about the amount in controversy leaves the court with little to assess other than "the defendant's appraisal of the amount in controversy" which "may be purely speculative and will ordinarily not provide grounds for his counsel to sign a notice of removal in good faith." *Id.*

Indeed, "in assessing the propriety of removal, the court considers the documents received by the defendant from the plaintiff - be it the initial complaint or a later received paper- and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." *Id.* at 1213.[5] In making that assessment, the court

---

[5] Pursuant to 28 U.S.C. § 1446, a defendant must either remove the case on the basis of the initial pleading, usually a complaint, or after receiving "a copy of an amended pleading, motion , order, or other paper." In the second category of cases, the definition of "other paper" has been developed judicially. *Lowery*, 483 F.3d at 1212-13. It has long been recognized in this circuit that "other paper" must be created through a voluntary act of the plaintiff. *See, e.g., Lowery*, 483 F.3d at 1213 n.63 (explaining that when removal is under the other paper provision of the second paragraph of § 1446(b), the defendant must hasve received from the other paper from the plaintiff); *Insinga v. LaBella*, 845 F.2d 249, 252 (11th Cir. 1988) (recognizing that "section 1446(b), as amended in 1949, has been widely interpreted as preserving the voluntary-involuntary rule")*; Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 549 (5th Cir. 1967) (holding that the 1949 amendment to § 1446(b) preserved the voluntary-involuntary rule under which a case may only become removable as a result of a voluntary act by a plaintiff); *Gaitor v. Pennisular & Occidental S.S. Co.,* 287 F.2d 252, 254 (5th Cir. 1961); *Merritt v. Mazda Motor of Am., Inc.,* 103 F. Supp. 2d 1305,1309 (M.D. Ala. 2000).

>has before it only the limited universe of evidence available when the motion to remand is filed- i.e., the notice of removal and accompanying documents. If that evidence is insufficient to establish that removal was proper or that jurisdiction is present, neither the defendant nor the court may speculate in an attempt to make up for the notice's failings. The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars.

*Id.* at 1214-15 (internal citation omitted). *Lowery*, itself was a tort claim in which the applicable law provided no rule for the calculation of damages. The Eleventh Circuit did acknowledge that

>[t]here are some exceptions to the rule that the court is limited to considering the removing documents. A defendant would be free to introduce evidence regarding damages arising from a source such as a contract provision whether or not the defendant received the contract from the plaintiff. In such situations, the underlying substantive law provides a rule that allows the court to determine the amount of damages. For example in contract law, the default measure of damages is the expectation damages; a court may look to the contract and determine what those damages would be.

*Id.* at1214 n.66. However, the Eleventh Circuit went on to recognized that

>[w]here the law gives no rule, the demand of the plaintiff must furnish one. When a plaintiff seeks unliquidated damages and does not make a specific demand, therefore, the factual information establishing the jurisdictional amount must come from the plaintiff.

*Id.* at1214 n.66 (internal citation and quotation omitted).

Here, it is undisputed that the removal was timely and lacking in procedural defects. It is also undisputed that minimal diversity exists. It is also undisputed that Cherokee initiated this removal after receiving the Complaint without the benefit of receiving any

"other paper" from Plaintiffs and that the face of the Complaint does not specify the total amount of damages sought for the breach of contract claims of the class. The dispute, here, centers on whether Cherokee has relied on appropriate types of evidence in its attempt to satisfy its burden and whether Cherokee has sufficiently shown that the amount in controversy exceeds $5,000,000.

Plaintiffs ignore the *dicta* in *Lowery* which sets forth an exception to the limited scope of materials a court may consider in determining whether Cherokee has established that subject matter jurisdiction is appropriate. Relying on that *dicta*, Cherokee asserts that the breach of contract claim set forth in the Complaint makes the damages readily deducible from Plaintiffs' allegations. Indeed, the *Lowery dicta* does say that in breach of contract case where the default measure of damages is expectation damages, a court may look to the contract and determine what those damages would be. 483 F.3d at 1214 n.66. While the claim before the Court is a breach of contract claim, Cherokee does not offer the contract at issue and a calculation of the actual damages at issue assume the Plaintiffs were to prevail as the *Lowery* case contemplates. Instead, Cherokee offers two declarations on which they contend the applicable law entitle them to rely. Given the dearth of binding post-*Lowery* precedent clarifying the exception recognized in *Lowery*, it is not clear to the Court if the declarations Cherokee submitted with its notice of removal are the type that the Eleventh Circuit has condoned. Nevertheless, in this case, it is unnecessary for the Court to decide this question because even if the declarations are considered the evidence is insufficient to satisfy

8

Cherokee's burden of establishing jurisdiction. Based on the record before the Court neither the amount of damages per class member nor the number of potential class members is clear. Plaintiffs' allegations do not establish either of these factors and the declarations proffered by Cherokee are simply insufficient to allow the Court to deduce this information. Indeed, the declarations of are such a nature as to invite the Court to speculate as to the damages, which is clearly not permissible.[6] The Court declines to look to the stars to divine the existence of jurisdiction. The Court concludes that there is great uncertainty regarding the amount in controversy and that uncertainty must be resolved in favor of remand. The Court therefore finds that Cherokee has not established, by a preponderance of the evidence, that the amount in controversy exceeds $5,000,000.

---

[6] The mathematical calculation in the Notice of Removal is predicated on assumptions, predictions, or averages. Cherokee takes the number of total policies issued and using the estimate of the number of loans that the actuary believes, on average, would have terminated before maturity (60%) and calculates an estimate of the number of policies where unearned premiums should have been rebated. Next, Cherokee takes the number of policy holders to which it rebated premiums because Cherokee somehow knew of the early termination and arrives at an estimate of the number of members of Plaintiffs' class: 162,259. Next, Cherokee estimates an average amount per refund of unearned premium rebate by taking the total amount of rebated given and dividing it by the number of policies which they know terminated early. This average refund amount is then multiplied by the total number policies estimated to comprise the class. There is no attempt to calculate the actual unearned premium to Plaintiffs or any unnamed class members. The amount of unearned premium per policy could vary widely. A borrower might unexpectedly win the lottery or inherit money days after taking out a consumer loan and immediately pay it off, thereby creating a very large unearned premium. On the other hand, a borrower may pay off a loan closer to the loan's maturity date, with a very small unearned premium resulting.

**CONCLUSION**

For the foregoing reasons, it is hereby ORDERED as follows:

1.      The Plaintiffs' Motion to Remand (Doc. # 10) is GRANTED.

2.      This case is REMANDED to the Circuit Court of Barbour County, Alabama.

3.      The Clerk is DIRECTED to take appropriate steps to immediately effect the remand.

DONE this the 26th day of June, 2009.

                               /s/ Mark E. Fuller
                               CHIEF UNITED STATES DISTRICT JUDGE